# GERAGOS & GERAGOS

A Professional Corporation
Lawyers
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone (213) 625-3900
Facsimile (213) 625-1600
Geragos@Geragos.com

MARK J. GERAGOS          SBN 108325
BEN J. MEISELAS          SBN 277412
GREG KIRAKOSIAN          SBN 294580
TYLER M. ROSS            SBN 292263

**SAMINI SCHEINBERG, PC**
BOBBY SAMINI             SBN 181796
NICOLE PRADO             SBN 269833
MATTHEW M. HOESLY        SBN 289593
949 S Coast Drive, Suite 420
Costa Mesa, CA 92626
Telephone: (949) 724-0900

Attorneys for Plaintiff ASHLEY BOEHLER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY BOEHLER, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>ZILLOW, INC., a Washington corporation; and DOES 1 through 50, inclusive;<br><br>Defendants. | **CASE NO.: 8:14-CV-01844**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **RETALIATION**<br>2. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>3. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>4. **WHISTLEBLOWER VIOLATIONS; 18 U.S.C. §1514A (SECTION 806) OF THE SARBANES-OXLEY ACT**<br><br>**DEMAND FOR JURY TRIAL** |

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

**INTRODUCTION**

1.     Plaintiff Ashley Boehler began his employment with Defendant Zillow, Inc. ("Zillow") on or about September 17, 2012 as an Inside Sales Consultant.  Shortly thereafter, Mr. Boehler uncovered a clandestine credit card fraud scheme and reported the scheme to his supervisors.  Mr. Boehler's supervisors chose to turn a blind eye and reap the benefits of the fraudulently inflated business they reported back to Zillow's corporate headquarters.  Mr. Boehler's managers warned him to "not get involved" and advised him to "stay out of matters" that were "not his business."  About a year later, Mr. Boehler uncovered more widespread and pervasive fraudulent conduct designed to rip off consumers and the public.  Yet again, Zillow managers refused to take action.  Mr. Boehler thereafter chose to notify Zillow's corporate offices of the shockingly deceptive conduct occurring within its own offices.  Despite Zillow's assurances that Mr. Boehler's identity would remain confidential, such promises were broken and Mr. Boehler's managers in Irvine, California, started a retaliatory campaign against Mr. Boehler designed to intimidate and harass him.  Mr. Boehler brings this action based on the retaliation he endured and to stop the abuse of power occurring within Zillow's offices.

**PARTIES**

2.     Plaintiff Ashley Boehler, at all relevant times, was an individual residing in Orange County, California.

3.     Defendant Zillow, Inc. (NASDAQ: Z), at all relevant times, was a Washington corporation registered to do business in the State of California.  Zillow is an online home and real estate marketplace for homebuyers, sellers, renters, real estate agents, mortgage professionals, landlords, and property managers.  Zillow claims its database contains more than 110 million U.S. homes.  Zillow also operates the largest real estate and rental advertising networks in the country.

4.     Plaintiff is unaware of the true names and capacities of the Defendants named herein as Does 1 through 50, inclusive, and therefore sues said Defendants by

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

such fictitious names.  Plaintiff will seek leave of court to amend this Complaint to allege the true names and capacities of said Defendants when the same are ascertained.  Plaintiff is informed and believes and thereon alleges that each of the aforesaid fictitiously named Defendants is responsible in some manner for the happenings and occurrences hereinafter alleged, and that Plaintiff's damages and injuries as herein alleged were caused by the conduct of said Defendants. The rest of the time it was

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy as to Plaintiff exceeds $75,000.00 exclusive of interest and costs and because Defendant is incorporated and has its principal place of business in a state other than the state in which the named Plaintiff resides.

6.     This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. §1367.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the Central District of California.

## GENERAL ALLEGATIONS

8.      Mr. Boehler began his employment with Zillow on or about September 17, 2012 as an inside sales consultant.  Over the course of his employment with Zillow, Mr. Boehler successfully performed his duties and consistently met his target sales goals and other criteria established by Zillow.  In fact, Mr. Boehler was not only recognized on several occasions for excelling in the performance of his duties, but was also routinely acknowledged as one of Zillow's top sales performers at the Irvine office.

9.     Despite his universal recognition as one of Zillow's top performers and despite receiving numerous accolades from Zillow's management for his laudable track record of consistently meeting and exceeding his target sales goals, Mr. Boehler

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   was nevertheless subjected to a hostile work environment. The hostile work
2   environment that Mr. Boehler was subjected to was specifically fueled by various
3   forms of retaliatory acts taken against Mr. Boehler by Zillow in retaliation for Mr.
4   Boehler raising several concerns with Zillow's management over certain aspects of
5   Zillow's corporate culture, including: general working conditions, wage and
6   hour/overtime pay issues, and most notably, numerous instances of systematic and
7   pervasive fraudulent activity that permeated throughout Zillow's Irvine office.

8      10.   The first of these fraudulent activities that Mr. Boehler discovered
9   occurred not more than two months into his employment with Zillow. On or about
10  December 2012, Mr. Boehler discovered that a certain member of the inside sales
11  team at the Irvine office was involved in credit card fraud. Mr. Boehler reported his
12  discovery of the credit card fraud to Jon Boller and Edward Cornelius—two of
13  Zillow's managers at the Irvine office. Neither Mr. Boller nor Mr. Cornelius took any
14  action when they were advised of the fraudulent activity. Instead, both Mr. Boller and
15  Mr. Cornelius cautioned Mr. Boehler to "not get involved" and advised him to "stay
16  out of matters" that were "not his business."

17     11.   About a year later, on or about October 2013, Mr. Boehler discovered
18  that the same individual who had previously been involved with the credit card fraud
19  from a year earlier was once again involved in additional fraudulent activities. Only
20  this time, these additional fraudulent activities not only involved credit card fraud, but
21  also encompassed and implicated additional fraudulent acts such as forged contracts,
22  instances of unlicensed real estate agents consulting with Zillow clients, and even
23  numerous RESPA violations. Once again, Mr. Boehler approached Zillow's local
24  Irvine management with the information he had discovered. And, once again, local
25  management refused to take action, instead flippantly remarking that they "would look
26  into it."

27     12.   Because of the seriousness of the fraudulent activities as well as the
28  potential liability that Mr. Boehler feared Zillow could be faced with if these issues

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

were not immediately addressed and rectified by Zillow's management, Mr. Boehler began compiling documentation that correlated to the additional fraudulent activities and events that he had discovered in October 2013.

13.    About a month later, on or about November 4, 2013, Mr. Boehler sent an anonymous email entitled "Immediate Attention Needed" from an account entitled "thezillowway@gmail.com" to several Zillow executives, including members of Zillow's own executive team at the local Irvine office as well members of upper management in Zillow's corporate office in Seattle.   The email contained the documentation that Mr. Boehler had compiled relating to the additional fraudulent activities that Mr. Boehler had recently uncovered.  A portion of that email follows:

> This matter needs immediate attention. Our entire company, our Premier Agent product, and the lender co-marketing program could be at risk.  Local management has been informed of these accounts over one month ago and refuses to take action. Numerous employees have complained…no action has been taken…it seems as if management has actively chosen to look the other way, or simply refuse to investigate for themselves. We have major RESPA violations happening.  We have agents not licensed to service our customers as Premier Agents.  We have what appear to be forged contracts being signed.

14.    Shortly after anonymously emailing the documentation to several Zillow executives, Mr. Boehler came forward and revealed his identity only to Zillow's upper management in Seattle.   It was thereafter that Mr. Boehler received an email on November 15, 2013 from Mr. Chad Cohen, the CFO of Zillow at Zillow's corporate office in Seattle, assuring Mr. Boehler that his name will be kept confidential and that the types of fraudulent activities that Mr. Boehler had brought to light "must never be tolerated."  The content of that email is set forth below:

> We will keep this confidential and thank you again for your hard work pulling this together.  It is brave of you to come

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

forward.  These types of activities must never be tolerated.  You folks should go home this weekend knowing that you did absolutely nothing wrong.

15.     As a result of Mr. Boehler raising his concerns about the pervasive fraudulent activities in his anonymous email, Zillow's upper management eventually took action and certain Zillow employees were terminated.

16.     Unfortunately, and despite the direct assurances by Zillow's CFO that his identity would remain confidential, Mr. Boehler began to gradually suffer retaliation from Zillow's management in the Irvine office on account of Mr. Boehler's efforts to expose the pervasive fraudulent activity.  Instances of Zillow's retaliation against Mr. Boehler include: being "written up" and issued "poor reviews" for his work, being removed from the "inbound queue" for several months before being arbitrarily "reinstated" back into the queue, having potentially lucrative sales accounts stripped from him and given to other representatives, consistently being micromanaged and having his daily tasks closely scrutinized by several members of Zillow's management team whereby Mr. Boehler had formerly enjoyed freedom from such overbearing scrutiny, and receiving numerous closed-door "disciplinary pep talks" from Zillow's management team for various "minor issues" and typically innocuous events.  Several of these instances are memorialized by reference to various email correspondence between Mr. Boehler and Zillow Management.

   a. In an email dated July 2, 2014, Mr. Gabe Schmidt referenced one of numerous conversations that took place between Zillow management and Mr. Boehler wherein Mr. Boehler received intense and arguably excessive scrutiny of his job performance wherein Mr. Boehler had never before been scrutinized or admonished like that.

   b. In an email chain starting on August 21, 2014, Mr. Boehler demonstrates how Zillow management overrides the stated rules of engagement for a

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   sales account by giving the sale to another representative even though
2   Mr. Boehler had initiated the contact.

3   c.   In an email dated August 5, 2014, Mr. Gabe Schmidt confirmed to Mr.
4   Boehler that "I put you back in the [inbound] queue" for which Mr.
5   Boehler had done absolutely nothing wrong to warrant his removal in the
6   first place.  The inbound queue is a pivotal device for sale representatives
7   such as Mr. Boehler who rely on the leads found in the "queue" to more
8   quickly and efficiently identify and pursue potentially lucrative sales.

9   d.   On August 25, 2014, Mr. Boehler was reprimanded by Gabe Schmidt for
10   "spending too much time with a new client."

11   17.   As the foregoing demonstrates, Mr. Boehler was repeatedly subjected to
12   retaliatory tactics by Zillow in the pretext of constant scrutiny and micromanagement
13   of Mr. Boehler's duties.  Prior to stepping forward and courageously reporting the
14   pervasive fraudulent activities to Zillow's upper management team in its corporate
15   offices in Seattle, Mr. Boehler had never been subjected to such aforementioned
16   retaliatory tactics utilized by Zillow's management team at the Irvine office.

17   **FIRST CAUSE OF ACTION**
18   **RETALIATION**

19   18.   Plaintiff realleges and incorporates as if fully stated herein each and
20   every allegation contained above and incorporates the same herein by this reference as
21   though set forth in full.

22   19.   Plaintiff brought forth his concerns over several pervasive fraudulent
23   activities that Defendant and several of its employees were engaged in.

24   20.   Defendant failed to address Plaintiff's concerns on numerous occasions.

25   21.   Defendant failed to address Plaintiff's concerns until Plaintiff sent out an
26   anonymous email to members of Defendant's upper management located in
27   Defendant's corporate offices headquartered in Seattle, Washington.

28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

22. The acts and/or omissions of Defendant materially and adversely affected the terms and conditions of Plaintiff's employment as Plaintiff was subjected to ridicule, abuse, arbitrary and capricious reprimands, and various other austerity measures taken against Plaintiff to punish him for "blowing the whistle" on the pervasive fraudulent activities that Defendant was engaged in.

23. That Plaintiff discovered and revealed the pervasive fraudulent activities was the sole motivating factor for the retaliatory acts taken against Plaintiff by Defendant as set forth above.

24. Defendant Zillow ratified its agents, servants, employees, and authorized representatives' unlawful conduct and behavior as described herein by: (1) allowing the pervasive fraudulent activity to occur without rectifying it despite repeated attempts by Plaintiff to call it to Defendant's attention; (2) condoning the pervasive fraudulent activities by failing to act upon Plaintiff's requests; and (3) condoning the retaliatory measures taken against Plaintiff by failing to intervene and halt the behavior and actions of Defendant's management team in the Irvine office.

25. The acts and/or omissions of Defendant caused Plaintiff to suffer harm and economic damages for loss of past projected commissions and earnings, loss of earning capacity, loss of such employment related opportunities as the opportunity for advancement and promotion within Defendant, in amounts according to proof at trial.

26. In engaging in the conduct as hereinabove alleged, Defendant and its agents, servants, employees, and authorized representatives acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiff's health, rights, and well-being, and intended to subject Plaintiff to unjust hardship, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

27.    Plaintiff realleges and incorporates as if fully stated herein each and every allegation contained above and incorporates the same herein by this reference as though set forth in full.

28.    Defendant's conduct, as described above, was extreme and outrageous and beyond the bounds of decency tolerated in a civilized society.

29.    Defendant's conduct was intended to cause Plaintiff emotional distress and Defendant acted with a reckless disregard to the probability that Plaintiff would suffer emotional distress.

30.    Defendant Zillow ratified its agents, servants, employees, and authorized representatives' unlawful conduct and behavior as described herein by: (1) allowing the pervasive fraudulent activity to occur without rectifying it despite repeated attempts by Plaintiff to call it to Defendant's attention; (2) condoning the pervasive fraudulent activities by failing to act upon Plaintiff's requests; and (3) condoning the retaliatory measures taken against Plaintiff by failing to intervene and halt the behavior and actions of Defendant's management team in the Irvine office.

31.    Plaintiff suffered severe emotional distress.

32.    Defendant was a substantial factor in causing Plaintiff's severe emotional distress.

33.    As a direct and proximate cause of the tortious, unlawful, and wrongful acts of Defendant and its respective agents, servants, employees, and authorized representatives as aforesaid, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.  Plaintiff has been damaged emotionally and financially, including but not limited to emotional suffering from emotional distress and ridicule, as well as loss of income and earnings potential.

34.     In engaging in the conduct as hereinabove alleged, Defendant and its agents, servants, employees, and authorized representatives acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiff's health, rights, and well-being, and intended to subject Plaintiff to unjust hardship, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## THIRD CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

35.     Plaintiff realleges and incorporates as if fully stated herein each and every allegation contained above and incorporates the same herein by this reference as though set forth in full.

36.     Defendant owed a duty to use reasonable care in its conduct with regard to the health, safety, and rights of Plaintiff.  It was foreseeable and probable that Plaintiff would suffer severe emotional distress from Defendant's conduct.

37.     Defendant was negligent by breaching the duty of care it owed to Plaintiff when Defendant's agents, employees, and representatives repeatedly harassed, reprimanded, discouraged, and intimidated Plaintiff, and Defendant was aware of such conduct by its agents, employees, and representatives and allowed it to continue.

38.     Defendant Zillow ratified its agents, servants, employees, and authorized representatives' unlawful conduct and behavior as described herein by: (1) allowing the pervasive fraudulent activity to occur without rectifying it despite repeated attempts by Plaintiff to call it to Defendant's attention; (2) condoning the pervasive fraudulent activities by failing to act upon Plaintiff's requests; and (3) condoning the retaliatory measures taken against Plaintiff by failing to intervene and halt the behavior and actions of Defendant's management team in the Irvine office.

39.     Plaintiff suffered severe emotional distress.

40.     Defendant was a substantial factor in causing Plaintiff's severe emotional distress.

41.     As a direct and proximate cause of the tortious, unlawful, and wrongful acts of Defendant and its respective agents, servants, employees, and authorized representatives as aforesaid, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.  Plaintiff has been damaged emotionally and financially, including but not limited to emotional suffering from emotional distress and ridicule, as well as loss of income and earnings potential.

42.     In engaging in the conduct as hereinabove alleged, Defendant and its agents, servants, employees, and authorized representatives acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiff's health, rights, and well-being, and intended to subject Plaintiff to unjust hardship, thereby warranting an assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## FOURTH CAUSE OF ACTION

## VIOLATION OF 18 U.S.C. §1514A (SECTION 806) OF THE SARBANES-OXLEY ACT

43.     Plaintiff realleges and incorporates as if fully stated herein each and every allegation contained above and incorporates the same herein by this reference as though set forth in full.

44.     Plaintiff engaged in a protected activity with regard to Plaintiff's disclosure to Defendant's upper management of the pervasive and fraudulent activities that Defendant and its employees were engaged in.

45.     Defendant knew that Plaintiff was engaged in the protected activity of reporting and providing information and documentation concerning the pervasive fraudulent activities that ran rampant throughout Defendant's office in Irvine, California.

46. Plaintiff suffered an unfavorable personnel action(s) by being subjected to unprecedented scrutiny and overbearing micromanagement of daily tasks, unwarranted negative performance reviews, austerity measures in the form of commissions hi-jacking, and other measures that directly and negatively affected Plaintiff's earnings.

47. The protected activity was the contributing factor in the unfavorable personnel action as set forth above, which invariably affected the outcome of Defendant's decision to exercise such an unfavorable personnel action(s) against Plaintiff.

48. Causation is established and inferred from the timing of the adverse employment action(s) following on the heels of the protected activity.

49. Defendant cannot and will not be able to prove by clear and convincing evidence that such unfavorable personnel action(s) as set forth above would have been taken in the absence of Plaintiff's protected behavior and/or conduct in reporting the pervasive fraudulent activities to Defendant's corporate offices in Seattle, Washington.

50. As a direct and proximate cause of the tortious, unlawful, and wrongful acts of Defendant and its respective agents, servants, employees, and authorized representatives as aforesaid, Plaintiff has suffered past and future special damages, including impairment of reputation and personal humiliation, past and future general damages in an amount according to proof at trial. Plaintiff has been damaged emotionally and financially, including but not limited to emotional suffering from emotional distress and ridicule, as well as loss of income and earnings potential.

51. In engaging in the conduct as hereinabove alleged, Defendant and its agents, servants, employees, and authorized representatives acted with malice, fraud, and oppression and/or in conscious disregard of Plaintiff's health, rights, and well-being, and intended to subject Plaintiff to unjust hardship, thereby warranting an

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

assessment of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ashley Boehler respectfully requests for judgment to be entered upon Defendant Zillow, Inc. as follows:

1. For general and special damages for an amount to be determined at trial;

2. For pre- and post-judgment interest according to proof;

3. For Punitive Damages where applicable;

4. For Attorney Fees where applicable;

3. For costs of suit incurred herein; and

4. For all other relief as this court may deem proper.

DATED: November 19, 2014              GERAGOS & GERAGOS, APC
                                      SAMINI SCHEINBERG, PC


                              By:  /s/ MARK J. GERAGOS
                                   MARK J. GERAGOS
                                   BEN J. MEISELAS
                                   GREG KIRAKOSIAN
                                   TYLER M. ROSS
                                   BOBBY SAMINI
                                   NICOLE PRADO
                                   MATTHEW M. HOESLY
                                   Attorneys for Plaintiff
                                   ASHLEY BOEHLER

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

**DEMAND FOR JURY TRIAL**

Plaintiff Ashley Boehler hereby demands a jury trial.

DATED:  November 19, 2014                    GERAGOS & GERAGOS, APC
                                             SAMINI SCHEINBERG, PC


                              By:   /s/ MARK J. GERAGOS
                                    MARK J. GERAGOS
                                    BEN J. MEISELAS
                                    GREG KIRAKOSIAN
                                    TYLER M. ROSS
                                    BOBBY SAMINI
                                    NICOLE PRADO
                                    MATTHEW M. HOESLY
                                    Attorneys for Plaintiff
                                    ASHLEY BOEHLER

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411