Brooke A. M. Taylor *(Pro Hac Vice)*
btaylor@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 3rd Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 373-7383
Facsimile: (206) 516-3883

Steven G. Sklaver (237612)
ssklaver@susmangodfrey.com
Davida Brook (275370)
dbrook@susmangodfrey.com
Ravi Doshi (297851)
rdoshi@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Attorneys for Defendant Zillow, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

ASHLEY BOEHLER, an individual;

Plaintiff,

v.

ZILLOW, INC., a Washington corporation; and DOES 1 through 50, inclusive

Defendants.

SACV 14-01844 DOC (DFMx)

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) AND MOTION FOR A MORE DEFINITIVE STATEMENT PURSUANT TO RULE 12(e)**

Date: March 2, 2015
Time: 8:30 a.m.
Place: Courtroom 9D

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. LEGAL STANDARD .......... 2
A. Rule 12(b)(6). .......... 2
B. Rule 12(e). .......... 3
III. ALLEGATIONS OF THE COMPLAINT .......... 3
IV. ARGUMENT .......... 5
A. The Court Should Dismiss Mr. Boehler's Retaliation Claim for Failure To State A Claim, Or, In The Alternative, Require Mr. Boehler To Provide A More Definitive Statement. .......... 5
B. The Court Should Dismiss With Prejudice Mr. Boehler's Claims For Intentional And Negligent Infliction Of Emotional Distress Because Mr. Boehler's Allegation That He Suffered "Severe Emotional Distress" Is Conclusory, And The Alleged Conduct Cannot Be "Extreme and Outrageous" As A Matter Of Law .......... 9
C. The Court Should Dismiss Mr. Boehler's Sarbanes-Oxley Claim Because Mr. Boehler Has Failed To Exhaust. .......... 11
V. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 2, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5, 9

*Butler-Rapp v. Lourdeaux*, 134 Cal. App. 4th 1220 (Ct. App. 2005) .......... 9

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) .......... 3

*Esteem v. City of Pasadena*, CV 04-662-GHK (MANx), 2007 WL 4270360 (C.D. Cal. Sept. 11, 2007) .......... 11

*Fletch v. W. Nat'l Life Ins. Co.*, 89 Cal. Rptr. 78 (Ct. App. 1970) .......... 9

*Gregory Village Partners, L.P. v. Chevron U.S.A. Inc.*, 805 F. Supp. 3d 888 (N.D. Cal. 2011) .......... 6

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009) .......... 9

*Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) .......... 3

*Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 53 Cal. Rptr. 2d 741 (Ct. App. 1996) .......... 2, 11

*Jasch v. Potter*, 302 F.3d 1092 (9th Cir. 2002) .......... 8

*Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV 10-08185 ODW FFMx, 2011 WL 2173786 (C.D. Cal. June 2, 2011) .......... 10

*Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011 (N.D. Cal. 2010) .......... 9

*McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258 (E.D. Cal. 2012) .......... 10

*Medrando v. Kern Cnty. Sheriff's Officer*, 921 F. Supp. 2d 1009 (E.D. Cal. 2013) .......... 6

*Melorich Buildings v. Superior Court*, 160 Cal. App. 3d 931 (Ct. App. 1984) .......... 10

*Pareto v. F.D.I.C.*,

139 F.3d 696 (9th Cir. 1998) .......... 2

*Pitman v. City of Oakland*,
197 Cal. App. 3d 1037 (Ct. App. 1988) .......... 11

*Ramirez v. Cnty. of Alameda*,
No. C12-4852 MEJ, 2013 WL 5934700 (N.D. Cal. Oct. 31, 2013) .......... 3

*Sagan v. Apple Computer, Inc.*,
874 F. Supp. 1072 (C.D. Cal. 1994) .......... 3

*Self Directed Placement Corp. v. Control Data Corp.*,
908 F.2d 462 (9th Cir. 1990) .......... 3

*Sherman v. Hertz Equip. Rental Corp.*,
No. CV10-1540-DOC, 2011 WL 317985 (C.D. Cal. Jan. 28, 2011) .......... 11

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 3

*Tempur-Pedic Int'l Inc. v. Angel Beds LLC*,
902 F. Supp. 2d 958 (S.D. Tex. 2012) .......... 8

**STATUTES**

18 U.S.C. § 1514A(b)(1)(A) .......... 2, 12

18 U.S.C. § 1514A(b)(1)(B) .......... 12

**RULES**

Fed. R. Civ. P. 8 .......... 2, 6

Fed. R. Civ. P. 12(b)(6) .......... 2

Fed. R. Civ. P. 12(e) .......... 2, 3, 6, 8

## I. INTRODUCTION

By his Complaint, Plaintiff Ashley Boehler attempts to craft a tale wherein he plays the victim of an abusive retaliation campaign implemented by his employer Defendant Zillow, Inc. ("Zillow") as payback for his reporting of fraudulent activity carried out by a co-worker. But Mr. Boehler's claim of retaliation is belied by the facts pleaded in his Complaint.

According to the Complaint, in response to Mr. Boehler's reporting of fraudulent activity: (i) Zillow's Chief Financial Officer, Chad Cohen, sent Mr. Boehler an email thanking Mr. Boehler for his bravery in coming forward. (*See* Complaint ("Compl.") at ¶ 14.); (ii) Mr. Cohen also explained to Mr. Boehler that "the type of fraudulent activities [he] had brought to light 'must never be tolerated.'" (Compl. at ¶ 14.); and (iii) Zillow fired the individual that Mr. Boehler had raised concerns about. (*See* Compl. at ¶ 15.) Thus, according to Mr. Boehler himself, Zillow promptly addressed the issue he had raised.

Furthermore, in examining the retaliation claim, we would expect to see alleged that Mr. Boehler suffered significant negative consequences. But instead, Mr. Boehler is still employed in the same position, in the same location, and at a higher base salary, as he enjoyed when he first raised his concerns with both local management and Zillow executives. What is more, the first alleged retaliatory act Mr. Boehler can cite to with any specificity did not take place until July 2, 2014, ***nearly two full years*** after he first reported his co-worker's activities. (*See* Compl. at ¶ 16.)

Regarding the nature of the alleged retaliation, the sort of acts listed by Mr. Boehler do not constitute the type of "abuse of power" Mr. Boehler declares. (Compl. at ¶ 1.) Rather, they involve being "written up," issued "poor reviews," and generally being "micromanaged." (*See, e.g.*, Compl. at ¶ 16.)

While Zillow is thus confident that Mr. Boehler's Complaint cannot withstand discovery, it fails even as a matter of law:

First, the Court should dismiss, or, in the alternative, require Mr. Boehler to provide a more definitive statement of, his retaliation claim because it fails to provide fair notice of what his claim is and the grounds upon which it rests. *See* Fed. R. Civ. P. 8; 12(e). Specifically, Mr. Boehler's claim does not identify whether he is alleging only a whistle-blowing action, or whether his Complaint also includes charges of, for example, discrimination. In the absence of such information Zillow cannot fully evaluate or respond to Mr. Boehler's claim.

Second, the Court should dismiss with prejudice Mr. Boehler's claims for intentional and negligent infliction of emotional distress because, even when taken as true, the alleged conduct cannot be "extreme and outrageous" as a matter of law. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (Ct. App. 1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional inflection of emotional distress, even if improper motivation is alleged.").

Third, the Court should dismiss with prejudice Mr. Boehler's Sarbanes-Oxley claim as Mr. Boehler has failed to exhaust available administrative remedies before filing suit before this Court. *See* 18 U.S.C. § 1514A(b)(1)(A) (requiring that "[a] person who alleges discharge or other discrimination by any person in violation of subsection (a)" must first file a complaint with the Secretary of Labor").

## II. LEGAL STANDARD

### A. Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) requires that a plaintiff's complaint must be dismissed when the allegations contained within it fail to state a claim upon which relief can be granted. In order to survive a 12(b)(6) motion to dismiss, a complaint must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In evaluating whether that standard has been met, the court must accept as true all material allegations of the complaint, as well as all reasonable inferences to be drawn therefrom. *See Pareto v. F.D.I.C.*, 139 F.3d 696,

699 (9th Cir. 1998). It should additionally construe the complaint in the light most favorable to the nonmoving party. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See id.* (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)). Where the plausibility standard cannot be met and the court is satisfied that the deficiencies within the complaint cannot be cured by amendment, dismissal with prejudice is appropriate. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**B. <u>Rule 12(e).</u>**

Rule 12(e) provides: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Motions for a more definite statement are "'proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.'" *Ramirez v. Cnty. of Alameda*, No. C12-4852 MEJ, 2013 WL 5934700, at *4 (N.D. Cal. Oct. 31, 2013) (quoting *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)). Although a plaintiff's complaint need not spell out all of the details of his claim, it must "set forth enough details so as to provide the defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery." *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990).

## III. <u>ALLEGATIONS OF THE COMPLAINT</u>

Mr. Boehler alleges that Zillow wrongfully retaliated against him after he raised various concerns with Zillow's local and executive management over, "most notably, numerous instances of systematic and pervasive fraudulent activity that permeated throughout Zillow's Irvine office." (Compl. at ¶¶ 9, 18-26.) Mr. Boehler also alleges that this retaliation caused him emotional distress (Compl. at

¶¶ 27—51), and was in violation of Section 806 of the Sarbanes-Oxley Act (Compl. at ¶¶ 43—51). The facts as pled in Mr. Boehler's Complaint reveal a very different story.

As explained in his Complaint, beginning on or about September 2012, Mr. Boehler was employed by Zillow as an Inside Sales Consultant in Zillow's Irvine, California office. (*See* Compl. at ¶ 3.) Shortly thereafter, he allegedly discovered what he believed to be evidence of fraudulent activity being carried out by a different Inside Sales Consultant in the Irvine office, which he allegedly reported to local management. (*See* Compl. at ¶ 10.) About a year later, Mr. Boehler allegedly discovered what he believed to be new evidence of fraudulent activity being carried out by the same Inside Sales Consultant he had previously brought to local management's attention, which he again allegedly reported to local management. (*See* Compl. at ¶ 11.) Concerned about the seriousness of the perceived fraudulent activity, on or about November 4, 2013, Mr. Boehler sent an anonymous email to several Zillow executives alerting them to his observations. (*See* Compl. at ¶ 12.) Soon thereafter, he revealed his identity to the Zillow executives. (*See* Compl. at ¶ 14 ("Shortly after anonymously emailing the documentation to several Zillow executives, Mr. Boehler came forward and revealed his identity only to Zillow's upper management in Seattle.")).

After revealing his identity to the Zillow executives, Mr. Boehler did not suffer retaliation. Rather, as Mr. Boehler acknowledges in his Complaint, in response to his reporting:

- The very next day, November 5, 2013, Zillow's Chief Financial Officer, Chad Cohen, sent Mr. Boehler an email explaining that "the type of fraudulent activities that Mr. Boehler had brought to light 'must never be tolerated.'" (Compl. at ¶ 14.) By that same email, Mr. Cohen also assured Mr. Boehler that Zillow would respect his confidentiality, and thanked him for his bravery in coming forward. (*See* Compl. at ¶ 14.)

Mr. Cohen was clear: "You folks should go home this weekend knowing that you did absolutely nothing wrong." (Compl. at ¶ 14.)

- Zillow then fired the individual about whom Mr. Boehler had raised concerns. (*See* Compl. at ¶ 15 ("As a result of Mr. Boehler raising his concerns about the pervasive fraudulent activities in his anonymous email, Zillow's upper management eventually took action and certain Zillow employees were terminated.").) Mr. Boehler, by contrast, is still employed in the same position, in the same location, and at a higher base salary, as he enjoyed when he raised his concerns with both local management and Zillow executives.

Despite these facts, now, ***nearly two years after Mr. Boehler's initial reporting*** of alleged wrongdoing, Mr. Boehler brings this Complaint alleging that he suffered retaliation and emotional distress as a result of, among other things, his reporting in 2012 and 2013. This retaliation involved such actions as Mr. Boehler being "written up" or issued "poor reviews," and generally being "micromanaged." (*See e.g.*, Compl. at ¶ 16.)[1] As explained herein, his Complaint should be dismissed.

## IV. ARGUMENT

### A. The Court Should Dismiss Mr. Boehler's Retaliation Claim for Failure To State A Claim, Or, In The Alternative, Require Mr. Boehler To Provide A More Definitive Statement.

Mr. Boehler's retaliation claim fails to state a claim. Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that a complaint is sufficient if it gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests"

[1] Notably, Mr. Boehler chose not to attach these "write-ups" or "poor reviews" to his Complaint, presumably because they reflect the actual, non-retaliatory, cause of the complained-of activity.

(internal quotes omitted)). Relatedly, Rule 12(e) requires that a complaint be "specific enough to notify defendant of the substance of the claim being asserted." *See Medrando v. Kern Cnty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1013 (E.D. Cal. 2013); *see also*, *Gregory Village Partners, L.P. v. Chevron U.S.A. Inc.*, 805 F. Supp. 3d 888, 896 (N.D. Cal. 2011) ("A motion for a more definite statements attacks intelligibility, not simply lack of detail. For this reason, the motion fails where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted."). Mr. Boehler's Complaint, however, fails to meet these minimum requirements.[2]

First, Mr. Boehler's Complaint fails to so much as advise Zillow and this Court whether he is claiming that Zillow violated state or federal law, let alone identify the specific state or federal laws he believes Zillow has violated. (*See* Compl. at ¶¶ 18—26 (in which Mr. Boehler does not cite to a single act, section of law, etc.).) Second, the facts alleged do not specify the nature and/or grounds for Mr. Boehler's retaliation claim. Specifically, Zillow cannot be sure whether Mr.

---

[2] Counsel for Zillow met in-person with counsel for Mr. Boehler to discuss this, as well as the other issues argued herein. *See* Declaration of Davida Brook ("Brook Decl.") at ¶ 3; *see also*, Ex. A to Brook Decl. (12/16/2014 email from counsel for Zillow to counsel for Mr. Boehler, outlining the issues raised herein and explaining that: "Mr. Boehler's retaliation claim is utterly vague and thus fails to state a claim. Rule 8 requires that a complaint contain 'a short and plaint statement of the claim.' Fed. R. Civ. P. 8. Mr. Boehler's complaint, however, does not provide defendant with notice of what his claim is or the ground upon which it is based. For example, Mr. Boehler's complaint does not specify whether he is bringing his claim for retaliation under state or federal law, let alone which state or federal laws."). During that conversation, counsel for Mr. Boehler indicated that they would consider amending Mr. Boehler's Complaint to specify the authority for his retaliation claim. *See* Brook Decl. at ¶ 4; *see also*, Ex. B. to Brook Decl. (12/18/2014 email from counsel for Zillow to counsel for Mr. Boehler, in which counsel for Zillow explained: "Per our discussion, you do not see a need to amend the Kremer, Freeman, or Young complaints. You are, however, considering amending the Boehler complaint, which you will get back to us on. If you do not amend the Boehler complaint by January 6, 2015, we will assume no amended complaint will be filed and will prepare and file our motion."). However, to date, counsel for Mr. Boehler has not indicated that they will amend Mr. Boehler's Complaint. *See* Brook Decl. at ¶ 5.

Boehler is only claiming retaliation in response to his alleged reporting of fraudulent activity in 2012 and 2013, or whether he is also claiming retaliation in response to his alleged reporting of other, unspecified, wrongdoings.

The source of this confusion is the Complaint itself. On the one hand, Mr. Boehler's Complaint focuses on his alleged reporting of supposed fraudulent activity. (*See e.g.,* Compl. at ¶ 1 (alleging that "Mr. Boehler uncovered a clandestine credit card fraud scheme and reported the scheme to his supervisors"); Compl. at ¶¶ 10—15 (describing Mr. Boehler's alleged discovery and reporting of supposed fraudulent activity); Compl. at ¶ 16 (claiming that "Mr. Boehler began to gradually suffer retaliation from Zillow's management in the Irvine office on account of Mr. Boehler's efforts to expose the pervasive fraudulent activity"); Compl. at ¶ 17 (alleging that: "Prior to stepping forward and courageously reporting the pervasive fraudulent activities to Zillow's upper management team in its corporate offices in Seattle, Mr. Boehler had never been subjected to such aforementioned retaliatory tactics utilized by Zillow's management team at the Irvine office."); Compl at ¶23 (alleging that: "That Plaintiff discovered and revealed the pervasive fraudulent activities was the sole motivating factor for the retaliatory acts taken against Plaintiff by Defendants as set forth above." (emphasis added)).) On the other hand, in his General Allegations, which the Complaint incorporates by reference into all four causes of action, Mr. Boehler claims that:

> The hostile work environment that Mr. Boehler was subjected to was specifically fueled by various forms of retaliatory acts taken against Mr. Boehler by Zillow in retaliation for Mr. Boehler raising ***several*** concerns with Zillow's management over certain aspects of Zillow's corporate culture, ***including: general working conditions, wage and hour/overtime pay issues***, and most notably, numerous instances of systematic and pervasive fraudulent activity that [supposedly] permeated throughout Zillow's Irvine office.

(Compl. at ¶ 9 (emphasis added).) The Complaint, therefore, does not provide adequate notice of whether Mr. Boehler's retaliation claim is based solely on his alleged reporting of supposed fraudulent activity, or whether it is based on that plus other complaints involving "general working conditions" – whatever those may be – and "wage and hour/overtime pay issues."

Without this information, Zillow cannot fully answer Mr. Boehler's Complaint as Zillow is not sure whether it includes claims for retaliation under any number of the state and/or federal laws that concern this tort. *See Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 971 (S.D. Tex. 2012) (explaining that the "touchstone" of a Rule 12(e) analysis is "whether the complaint is so vague or ambiguous that the defendant cannot reasonably prepare a response"). This is particularly problematic where, as is the case here, the various statutes have different pleading requirements. *See e.g.*, *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002) (explaining that in order to bring a Title VII cause of action against a federal agency in district court, an employee must first exhaust his administrative remedies by complying with regulatory and judicially-imposed exhaustion requirements, including the requirement to pursue the administrative claim with diligence and in good faith).

In sum, Mr. Boehler's Complaint does not specify the authority for his retaliation claim, and the facts alleged hint at, but fail to adequately give notice of, multiple bases for said claim. This vagueness should be cured before discovery as, given the different possible pleading requirements, knowledge of the authority for Mr. Boehler's retaliation claim may impact Zillow's responsive pleading. Accordingly, the Court should either dismiss this claim for failure to state a claim, or, in the alternative, require that Mr. Boehler provide a more definitive statement.

**B. <u>The Court Should Dismiss With Prejudice Mr. Boehler's Claims For Intentional And Negligent Infliction Of Emotional Distress Because Mr. Boehler's Allegation That He Suffered "Severe Emotional Distress" Is Conclusory, And The Alleged Conduct Cannot Be "Extreme and Outrageous" As A Matter Of Law.</u>**

Mr. Boehler's causes of action for emotional distress should be dismissed with prejudice because his Complaint fails to allege any non-conclusory allegation that he actually suffered severe emotional distress as a result of the now-complained of conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555). To state a claim for intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct; (2) intended to cause or done in reckless disregard for causing; (3) severe emotional distress; and (4) actual and proximate causation." *Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1021-22 (N.D. Cal. 2010). "The conduct must be so extreme as to 'exceed all bounds of that usually tolerated in a civilized community,' and the distress so severe 'that no reasonable [person] in a civilized society should be expected to endure it.'" *Id.* (quoting *Fletch v. W. Nat'l Life Ins. Co.*, 89 Cal. Rptr. 78 (Ct. App. 1970)). The elements for a claim of negligent infliction of emotional distress are the same, but without the intent requirement. *See Butler-Rapp v. Lourdeaux*, 134 Cal. App. 4th 1220, 1226 n.1 (Ct. App. 2005).

The only allegation Mr. Boehler makes regarding his suffering of emotional distress is a conclusory one that he "suffered severe emotional distress." (*See* Compl. at ¶¶ 31, 39.) Mr. Boehler does not elaborate on the symptoms or conditions of his distress, and falls far short of demonstrating that he can overcome the "high bar" set by the California Supreme Court for showing severe emotional distress. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (upholding the grant of

summary judgment on a plaintiff's emotional distress claim because "plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of defendant's comments to her . . . do not comprise emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it") (internal quotation omitted); *see also McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1274–75 (E.D. Cal. 2012) (granting a motion to dismiss a claim of intentional infliction of emotional distress where the complaint made "sweeping references to 'anguish, embarrassment, anxiety, nervousness, humiliation, worry . . . and shame' with no facts to support such symptoms or conditions"); *Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV 10-08185 ODW FFMx, 2011 WL 2173786 at *7 (C.D. Cal. June 2, 2011) (dismissing a plaintiff's emotional distress claim where the only allegation as to either the "quantity or quality" of the emotional distress suffered was that the plaintiff had "suffered emotional distress in the amount of $5,000,000"). In the absence of any non-conclusory allegation, the Court should dismiss Mr. Boehler's causes of action for emotional distress.

Even assuming Mr. Boehler can amend his complaint to elaborate on the alleged symptoms of, and factual support for, his emotional distress claims, it is bedrock law that managerial actions of the kind alleged in Mr. Boehler's Complaint cannot be the basis for a legally cognizable claim for emotional distress because they cannot satisfy the requirement that the conduct to which a plaintiff was subjected was "extreme and outrageous." *See Melorich Buildings v. Superior Court*, 160 Cal. App. 3d 931, 936 (Ct. App. 1984) (explaining that liability for inflicting emotional distress has been found only where the conduct has been "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). Mr. Boehler's emotional distress claims are derivative of his retaliation claim in which he alleges that Zillow took such actions as writing

him up, issuing him poor reviews, taking him off the so-called "inbound queue," micromanaging his work, scrutinizing his day-to-day actives, and other similar charges. (*See* Compl. at ¶ 16.) Such actions, even if true, plainly do not constitute events "so severe that no reasonable man could be expected to endure [them]." *Esteem v. City of Pasadena*, CV 04-662-GHK (MANx), 2007 WL 4270360, at *18 (C.D. Cal. Sept. 11, 2007) ("Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."). Rather, as a matter of law, managerial actions of the kind alleged by Mr. Boehler cannot establish an emotional distress claim. *See Janken*, 46 Cal. App. 4th at 80 (Ct. App. 1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional inflection of emotional distress, even if improper motivation is alleged."). Mr. Boehler has thus not pled any outrageous conduct "beyond all possible bounds of decency." Nor could he where the retaliation he alleges was nothing more than a series of personnel decisions, which even if revengeful or uncomfortable, would not support a claim of intentional or negligent infliction of emotional distress. *See e.g.*, *Pitman v. City of Oakland*, 197 Cal. App. 3d 1037, 1047 (Ct. App. 1988) (holding that the single act of terminating an employee does not meet the standard for extreme and outrageous conduct as required to trigger liability for intentional infliction of emotional distress); *Sherman v. Hertz Equip. Rental Corp.*, No. CV10-1540-DOC, 2011 WL 317985, at *2 (C.D. Cal. Jan. 28, 2011) (accord). Mr. Boehler's emotional distress claims thus fail as a matter of law.

**C. <u>The Court Should Dismiss Mr. Boehler's Sarbanes-Oxley Claim Because Mr. Boehler Has Failed To Exhaust.</u>**

Mr. Boehler has not exhausted his Sarbanes-Oxley claim. Prior to bringing a civil lawsuit under Section 806, an employee must first file a complaint with the

Secretary of Labor. *See* 18 U.S.C. § 1514A(b)(1)(A) ("A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by – (A) filing a complaint with the Secretary of Labor"). Only if the Secretary of Labor does not act within 180 days may the employee then file suit for *de novo* review in federal court. *See* 18 U.S.C. § 1514A(b)(1)(B) ("A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by – (B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.").

Here, Mr. Boehler has not pled that he filed a complaint with the Secretary of Labor. Accordingly, Mr. Boehler's Sarbanes-Oxley claim is unexhausted and should be dismissed with prejudice**.**

## V. CONCLUSION

For the reasons stated herein, Mr. Boehler's retaliation claim should be dismissed or clarified. Mr. Boehler's claims for intentional and negligent infliction of emotional distress should be dismissed with prejudice. And Mr. Boehler's Sarbanes-Oxley claim should be dismissed as unexhausted.

Dated: December 16, 2014

BROOKE TAYLOR
STEVEN G. SKLAVER
DAVIDA BROOK
RAVI DOSHI
SUSMAN GODFREY L.L.P.

By: */s/ Steven G. Slaver*
Steven G. Sklaver

Attorneys for Defendant Zillow, Inc.